UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAMPION DANIEL MUTHLE,<br><br>    Plaintiff,<br><br>  v.<br><br>SAP.IO, et al.,<br><br>    Defendants. | No. C 19-06124 WHA<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Defendants move for summary judgment, asserting a settlement agreement from a prior suit between the parties bars the current claims. For the foregoing reasons, the motion is **GRANTED**.

## STATEMENT

Prior orders detail the facts of the case (Dkt. No. 42). In brief, pro se plaintiff accuses defendants of infringing his intellectual property. In April 2017, plaintiff disclosed a pitch deck to solicit defendants' investment in his business venture. Defendants released a product shortly after which, plaintiff alleges, was "a virtually identical, mirror-image" of his technology (*ibid.*).

This suit is not the first dispute between the parties. In 2018, plaintiff or his counsel (at the time), sent several letters alleging "there is strong evidence supporting claims for infringement, misappropriation of trade secrets, breach of contract, and fraud by SAP.io and Atlas.io" (Dkt. No. 61-1 at 22). The culmination was a June 2018 cease and desist letter

threating legal action against defendants (Dkt. No. 61-4). Defendants then filed for declaratory judgment in the Central District of California. *SAP America, Inc. v. Adheat, Inc.*, No. C 18-05764-JFW (Dkt. No. 61-5). Ultimately, the parties settled (Dkt. No. 12-3). On October 4, 2018, plaintiff and defendants agreed to drop *all* their claims against each other and walk away peaceably (*ibid.*).

Plaintiff then filed the current suit in June 2019. In a Rule 12(b)(6) motion, defendants asserted the settlement agreement to bar plaintiff's claims (Dkt. No. 12). The undersigned converted the motion into one for summary judgment (Dkt. No. 42). This order follows several rounds of briefing (Dkt. Nos. 16, 28, 44, 51, 52, 61), expedited discovery, and oral argument.

## ANALYSIS

Summary judgment is appropriate if there is no genuine dispute of material fact. Rule 56(a). Material facts are those "that might affect the outcome of the suit" and "the substantive law's identification of which facts are critical and which facts are irrelevant . . . governs." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A genuine dispute is one where there is "sufficient evidence" such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* At 248–49. "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Ibid.*

The primary issue is the validity of the settlement agreement which defendants' offer to bar plaintiff's claims. Generally, "when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its provisions are contrary to his intentions or understanding." *Palmquist v. Mercer*, 272 P.2d 26, 30 (Cal. 1954). Our court of appeals has recognized that duress, such as "[e]conomic duress[,] can excuse an innocent party's contractual obligations when the other contracting party does a wrongful act . . . ." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1119 (9th Cir. 2018). But note, the "wrongful act" must be committed by the "other contracting party." *Ibid.*

2

Defendants offer the settlement agreement, signed by both plaintiff and defendants (Dkt. No. 12-3). Plaintiff contends the agreement is invalid as his assent was induced via duress (Dkt. No. 44). He offers his declaration (Dkt. No. 52) as evidence to create a genuine dispute of fact about the validity of the agreement. *See* Rule 56(a). Plaintiff fails to create such a dispute.

Plaintiff's declaration details a rough set of circumstances. Plaintiff suffered severe injury in an Amtrak train crash. Following another injury during a trip to Spain, "it became clear that [his] life was in danger and someone was likely trying to kill [him] before [he] could launch [his] company completely." So he fled to "South Africa on an emergency passport to receive medical attention and find safety." Yet even there plaintiff "was attacked with electricity, radiofrequency, and vibratory weapons on a daily and nightly basis." Plaintiff's appeals to "friends and family at the State Department, the White House, and Human Rights Organizations" appear to have been ignored (Dkt. No. 52 at 3–4).

For the purposes of summary judgment, plaintiff's story is true. *See Anderson*, 242 U.S. at 255. But plaintiff does not allege *facts* indicating defendants or their law firm had anything to do with plaintiff's difficulties. As our court of appeals indicated, it is the "other contracting party['s]" conduct in causing duress that undermines the contract — not unrelated parties' conduct. *See Hicks*, 897 F.3d at 1119. Indeed, plaintiff admits any allegation of defendants' or defense counsel's misconduct is speculative: "In hindsight, it seems as though someone planned the incident[s] . . . When I think of who might have benefited, especially considering their launch of ATLAS.IO, SAP.IO comes immediately to mind" (*ibid.*). Federal Rule of Evidence 602 bars such speculation. Thus, plaintiff does not present sufficient evidence to create a genuine dispute as to the validity of the settlement agreement based on defendants' misbehavior. *Anderson*, 242 U.S. at 248–49.

The remaining issue is, then, whether the settlement agreement encompasses and bars plaintiff's current claims. It does. Both plaintiff and defendants "irrevocably and forever settle[d], release[d], and absolutely discharge[d] [each other] from any and all claims that could have been brought, whether known or unknown" (Dkt. No. 12-3). Plaintiff's current claims are the same that could have been bought in the prior suit. Plaintiff's final cease and desist letter

that caused defendants to file for declaratory judgment asserted "there is strong evidence supporting claims for infringement, misappropriation of trade secrets, breach of contract, and fraud by SAP.io and Atlas.io" (Dkt. 61-4). Earlier, plaintiff had explained the dispute arose out of his April 2017 submission of a "pitch deck describing the scope and framework of the Adheat Technology to SAP.io Fund . . ." (Dkt. No. 61-1 at 21). This suit similarly arises from plaintiff's April 2017 submission of "a copy of its pitch deck describing the scope and framework of the Adheat Technology to SAP.io Fund . . ." (Dkt. No. 23). Thus, plaintiff's patent infringement, trade secret misappropriation, contract, and tort claims "could have been brought" in the prior suit. Under the terms of the settlement, these claims are barred (Dkt. No. 12-3).

The settlement involved a walk-away, meaning both parties walked away from the earlier lawsuit. No money exchanged hands. At first blush, the absence of money might seem unfair to plaintiff. But, on reflection, plaintiff did receive consideration. He himself provoked the earlier lawsuit by sending cease and desist letters. He should have expected a declaratory relief suit. When it came, he should have litigated it, if his claims had any merit. Instead, he accepted a walk-away deal to avoid the risk of having to pay the accused's costs of suit. That was enough to make the deal fair.

**CONCLUSION**

Finding plaintiff has provided insufficient evidence to create a genuine dispute as to the validity of the settlement agreement, and finding the settlement agreement encompasses and bars plaintiff's current claims, defendants' motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

Dated: January 23, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE